```
UNITED STATES DISTRICT COURT                    USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                   DOCUMENT
                                                ELECTRONICALLY FILED
-------------------------------------------X    DOC #:
WILLIAM CALDARERA,                         :    DATE FILED:  12/13/17
                                           :
                              Plaintiff,   :
                                           :
              -against-                    :    17-CV-1414 (VEC)
                                           :
INTERNATIONAL LONGSHOREMEN'S               :    ORDER AND OPINION
ASSOCIATION, LOCAL 1; DAVID CICALESE,      :
as President of International Longshoremen's :
Association, Local 1; and GLOBAL CONTAINER :
SERVICES, INC.,                            :
                                           :
                              Defendants.  :
-------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

Plaintiff William Caldarera brings this action against Defendants International Longshoremen's Association ("ILA"), Local 1, his union, and Global Container Services, Inc., his former employer ("GCT").[1] Defendants have moved to dismiss, most recently arguing that Plaintiff's claims are precluded by a final and binding arbitration decision entered pursuant to a contractual grievance process. Plaintiff also moved to amend his complaint. Defendants' motion to dismiss is granted in part with respect to the hybrid claim against the union and the employer but is denied with respect to a duty of fair representation ("DFR") claim against the union based on conduct predating the grievance process. Plaintiff's motion to amend is granted in part with respect to his DFR claims, but he is not permitted to add any new Defendants.

---

[1] The employer Defendant contends it was improperly pled as Global Container Services, Inc., and should have been pled as GCT Bayonne, LP. For the purposes of this Opinion, the Court shall refer to the entity as GCT.

1

## I. BACKGROUND

Caldarera is a member of Local 1, which represents workers involved in unloading ships in and around New York City. First Amended Complaint ("FAC") [Dkt. 35] ¶¶ 4–5. He specifically works as a Checker, which includes verifying the identity of shipping containers and assisting with loading and unloading ships. *Id*. ¶ 8. Caldarera's relationship with his employers is governed by a Collective Bargaining Agreement between the New York Shipping Association ("NYSA") and ILA, AFL-CIO. *Id*. ¶ 7; Collective Bargaining Agreement ("CBA") [Dkt. 35-1].

Checkers are assigned work based on a seniority system laid out in the CBA, such that Checkers on a "Master List" for a given pier and terminal receive priority in hiring, followed by "extras," who are not on a Master List and whose assignments are based on alphabetic seniority groupings. *See* FAC ¶¶ 10, 12, 13. While employers' hiring agents select workers from the extras, Plaintiff alleges that these agents in practice yield to the Local 1 union steward or "dock boss" in deciding who will work which job at a given pier, giving the union control over which Checkers receive greater overtime opportunities, a determination customarily based on the seniority groupings. *Id*. ¶¶ 14–16. Caldarera is in the "R" seniority group, and not on a Master List; he alleges that Local 1 has not updated the Master Lists as workers have retired or moved. *Id*. ¶¶ 10, 11, 17.

Plaintiff claims that, in September 2016, after working for Defendant GCT for about a year, he got into an argument with his Local 1 "Shop Steward," Michael Fulbrook; Fulbrook asked GCT to fire Plaintiff, which it did days after the altercation. FAC ¶¶ 18–20. Although he worked a bit more for GCT in December 2016, Caldarera alleges that he subsequently received a "do not hire" letter from GCT, which falsely claimed that he failed to spot containers during his work in December. *Id*. ¶¶ 21–22. He has not been hired by GCT since, and claims that Local 1

colluded with GCT management to issue the letter. *Id*. ¶¶ 22–23. Additionally, Plaintiff claims that, after his September discharge by GCT, Local 1 directed that he be assigned by other employers to jobs below his seniority level that offered less overtime. *Id*. ¶¶ 24–26.

In response, Plaintiff filed a number of grievances, which progressed through the CBA's grievance process. FAC ¶¶ 27–32. The CBA provides for a five-step process, beginning with an informal airing of grievances. *See* CBA Art. XXV and § 2. The second step involves meeting with two Labor Adjusters representing the ILA and the NYSA, respectively, the resolution of which may be appealed to the third step, a joint NYSE-ILA Labor Relations Committee ("LRC"). *See id*. Art. XXV § 3. The LRC consists of representatives of both the employers and the union, and, unless it is deadlocked, its determination is a final, binding arbitration award, with no further appeal permitted. *Id*. Art. XXV §§ 4(a), 5(a). A grievant may appear before the LRC with counsel. *Id*. § 3(b). The fourth and fifth steps, not applicable here, include review by the NYSA-ILA Contract Board and arbitration, respectively. *See id*. §§ 5, 6.

In Plaintiff's case, his grievances were heard by the LRC on June 27, 2017, after the motion to dismiss was fully-briefed, necessitating supplemental briefing. *See* Decision and Award ("LRC Decision") [Dkt. 60-1] at 1; Order, August 18, 2017 ("August Order") [Dkt. 58]. The LRC included eight members, and Plaintiff appeared before them with counsel. LRC Decision at 1–2. While five of Caldarera's grievances had been heard by, denied by, and appealed from the Labor Adjusters, the LRC also heard 12 other grievances, which had not yet reached the Labor Adjusters. *Id*. at 2, 11–12. Fourteen of the 17 grievances related to Plaintiff's seniority classification and work assignments, one related to his discharge from GCT, and two related to a separate "do not hire" letter from a different employer, Maher Terminals. *Id*. at 3.

The LRC determined that, although seniority protects a Checker's right to be hired for a given day, it does not affect the employer's rights to establish criteria for job assignments and to assign employees as it deems best. LRC Decision at 8. "Although Mr. Caldarera alleged that the Dock Bosses acted improperly against him, he did not present witnesses or other evidence at the meeting to support his allegations, nor did his attorney question any of [the] witnesses at the hearing." *Id*. at 9. The LRC also upheld Maher's "do not hire" letter, and determined that Caldarera's conceded failure to file a grievance concerning the September 2016 events involving GCT barred that grievance as untimely under the CBA. *See id*. at 9–10 (citing CBA Art. XXV § 1).

In Caldarera's supplemental reply memorandum, he provides a set of "Supplemental Facts" that, *inter alia*, allege that those in the room at the LRC hearing were hostile to him, that it was not made clear who the witnesses were, and that there was no formal examination of documents and witnesses. *See* Plaintiff's Memorandum Responding to Defendants' Supplemental Memorandum in Support of Motion to Dismiss ("Pl.'s Supp. Br.") [Dkt. 62] at 2.

## II. DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above

the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the pleadings as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). A court may take judicial notice of facts outside the pleadings provided they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, courts have regularly taken judicial notice of arbitration awards upon a motion to dismiss. *See, e.g.*, *Gorbaty v. Kelly*, No. 01-CV-8112 (LMM), 2003 WL 21673627, at *2 n.3 (S.D.N.Y. July 17, 2003) (taking judicial notice of an arbitration award).

### A. Defendants Misconstrued Plaintiff's Claims, Which Should be Construed as a Duty of Fair Representation Claim and a Hybrid Claim

An employee may sue his employer for breach of a collective bargaining agreement, but normally must first exhaust any grievance or arbitration procedures contained in that agreement. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163–64 (1983) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965); *Smith v. Evening News Assn.*, 371 U.S. 195 (1962)). "Subject to very limited judicial review, [the employee] will be bound by the result according to the finality provisions of the agreement." *Id*. at 164 (citations omitted). This rule is unjust, however, when the union breaches its DFR in the course of representing the employee in the grievance process. *Id*. (citations omitted). Such a suit thus morphs into a hybrid claim containing two interdependent causes of action: a claim against the employer under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for breach of the CBA, and a claim against the union for breach of its DFR, implied under the National Labor Relations Act, 29 U.S.C.

5

§ 151. *Id*. (citations omitted). "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Id*. at 165.

Relatedly, section 301 preempts state law breach of contract claims that "depend[ ] on an interpretation of the collective-bargaining agreement." *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 233 (2d Cir. 1997) (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260–62 (1994)). *See also Spiegel v. Bekowies*, 669 F. App'x 38, 39 (2d Cir. 2016) ("A state law claim is preempted when its resolution depends on an interpretation of a collective-bargaining agreement, but not merely when a collective-bargaining agreement will be consulted in the course of state-law litigation.") (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001)) (internal quotation marks omitted).

Looking to Plaintiff's FAC, the allegations about Local 1's misconduct appear to relate to actions that occurred *before* Plaintiff initiated the grievance process. *See, e.g.*, FAC ¶ 35 ("Defendant Local 1 has violated its duty of fair representation by acting arbitrarily, discriminatorily, and/or in bad faith and/or without reason or cause when it required Plaintiff to work jobs that are customarily assigned to individuals with lower seniority than Plaintiff; and by colluding with GCT to terminate his regular employment for December 2016."). Although not raised in his FAC, Plaintiff also appears to allege that the union acted improperly *during* the grievance process. *See* Pl.'s Supp. Br. at 2 ("At [the LRC] meeting, both union and management were united in asserting, throughout the meeting, that although a member had to be assigned to an employer based on his seniority, once the employee walked into that shipyard, the employer could assign him wherever it pleased, no matter what the employee's seniority was. . . . [The LRC meeting] was a meeting in a room with 30 to 40 men, all of whom were hostile to Plaintiff, both on the union side and on the management side."). As for the employer, Plaintiff alleges in

the FAC that GCT "breached the CBA when it refused to allow Plaintiff to perform his regular work after September 23, 2016, and effectively terminated Plaintiff without proper cause, and when it issued its 'Do Not Hire' letter in December 2016." FAC ¶ 36.

Nonetheless, from the outset, Defendants have misconstrued Plaintiff's suit purely as a hybrid claim. *See, e.g.*, Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Defs.' Br.") [Dkt. 42] at 1 ("Plaintiff, William Caldarera, brought this 'hybrid' breach of the duty of fair representation and breach of contract action under Section 301 . . . ."), at 6 ("Plaintiff's 'hybrid' representation claim under Section 301 is double-barreled: it requires him to establish a breach of the duty of fair representation ('DFR') by his union and a breach of the CBA by his employer."). A hybrid claim is intended to resolve, along with employer breach, a union's failure to represent an employee *during* the grievance process. It therefore is inappropriate to incorporate allegedly inadequate representation that *preceded* (and, as alleged here, prompted) the grievance process, namely the alleged conduct related to the work assignments and collusive discharge. Yet Defendants do not make this distinction. The Court thus construes Plaintiff's suit as alleging DFR claims *separate from and in addition to* the hybrid claim,[2] the latter of which supplants the breach of contract claim through the preemptive effect of federal labor law.

Because Defendants have not briefed the Court on dismissal of the stand-alone DFR claims, for which they may have valid defenses, it will allow Local 1 to do so after the

---

[2] While Plaintiff did not explicitly allege DFR issues with regard to the grievance process in his FAC, as that process partially post-dated that pleading, he did allege his employer's CBA breach in the FAC and informally raised the associated DFR issues in supplemental briefing. A hybrid claim is such whether Plaintiff formally sues the union, the employer, or both. *See DelCostello*, 462 U.S. at 165. To the extent that first raising the pertinent DFR allegations in supplemental briefing may be insufficient to support that half of the hybrid claim (leaving just the CBA breach claim), the Court need not decide that question because, as discussed below, the hybrid claim is precluded by the final and binding LRC decision, as would be the CBA breach claim if it stood on its own.

7

Complaint is amended, as discussed further below.³ *See* Defs.' Br.; Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Defs.' Reply Br.") [Dkt. 47]; Supplemental Memorandum of Law in Further Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Defs.' Supp. Br.") [Dkt. 59]. In contrast, the Defendants' memoranda sufficiently enable the Court to address the hybrid claim.

### B. Plaintiff's Hybrid Claim is Precluded by the LRC Decision and Award

Defendants' briefs supporting its motion to dismiss initially focused on Plaintiff's failure to exhaust contractual remedies, and that exhaustion would not have been futile, because Plaintiff's hearing before the LRC was scheduled for shortly after the motion's filing.⁴ *See* Defs.' Br. at 6–9; Defs.' Reply Br. at 1–7. Recognizing that the LRC decision was forthcoming and could affect the disposition of the case, the Court ordered Defendants to submit supplemental briefing along with the LRC decision, and allowed Plaintiff to file a supplemental response thereafter.⁵ *See* August Order. Because the LRC decision effectively mooted Defendants' exhaustion arguments, their supplemental briefing shifted to argue that the LRC's decision is a final and binding arbitral award that precludes a lawsuit, and that no exceptions warrant a different conclusion. *See* Defs.' Supp. Br.

---

³ These DFR claims are alleged against only the union, and no claims against the employer survive the motion to dismiss, as discussed below.

⁴ While the Defendants' Reply Brief was filed on July 17, 2017, a few weeks after the LRC hearing on June 27, 2017, the LRC's decision was not rendered until August 9, 2017, such that the grievance process had not concluded when the Reply Brief was filed. *See* Defs.' Reply Br. at 8; LRC Decision at 12.

⁵ The Court also dismissed claims against an additional Defendant, David Cicalese, President of Local 1, in its August Order.

### i. The LRC Decision is Final and Binding

In accordance with the parties' CBA, absent a deadlocked vote, the LRC's decisions "shall be final and binding, shall constitute an enforceable arbitration award, and no further appeal shall be permitted." CBA Art. XXV § 5(a). Generally, "if the award at bar is the parties' chosen instrument for the definitive settlement of grievances under [a CBA], it is enforceable under [section] 301 [and courts may not] reweigh the merits of the grievance." *Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963) (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960)). To that end, decisions of the LRC are final and binding arbitral awards. *See, e.g.*, *Int'l Longshoremen's Ass'n, AFL-CIO v. Hellenic Lines, Ltd.*, 549 F. Supp. 435, 437–38 (S.D.N.Y. 1982) (finding that the Step-Three LRC decision under a substantially similar predecessor CBA scheme was final and binding).

The LRC decision appears to have encompassed the broad set of grievances Plaintiff identified in his FAC, namely those related to his work assignments on various jobs as well as his discharge from GCT.[6] *See* LRC Decision at 8–12. Accordingly, because Plaintiff

---

[6] The LRC determined that Plaintiff never filed a grievance contesting the September 2016 discharge, and that this grievance was thus barred as untimely. *See* LRC Decision at 10, 12. While it is unclear whether this determination also included any claim based on the related GCT "do not hire" letter, to the extent that it did not, and to the extent that the "do not hire" letter might support a separate grievance, that grievance would be barred for Plaintiff's failure to exhaust his contractual remedies. Plaintiff's FAC does not allege that he filed a first-step grievance, but instead that he raised the letter, ostensibly orally, at a Second-Step Labor Adjusters meeting. *See* FAC ¶¶ 22, 23. This comports with Defendants' arguments, supported by an affidavit from Frank Agosta, the Labor Adjuster, who swore that grievances are initiated through a written form presented to a union officer, that five of Caldarera's filed grievances were heard at a Labor Adjusters meeting on January 19, 2017, and that Caldarera never submitted a written grievance concerning the GCT "do not hire" letter. *See* Affidavit of Frank Agosta ("Agosta Aff.") [Dkt. 43] ¶¶ 8, 17, 18. To proceed under section 301, an "employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement." *Farkas v. Ellis*, 780 F. Supp. 1013, 1016 (S.D.N.Y. 1992) (internal quotation marks and citations omitted). Plaintiff did not. Nor is the futility exception available to Plaintiff, as he must still allege that he tried to follow the grievance procedure and failed in order to avail himself of that exception. *See id.* at 1017 (citing *Glover v. St. Louis–San Francisco Railway*, 393 U.S. 324, 331 (1969)).

participated in and reached the end of the process prescribed by the CBA, his grievances as raised in the hybrid claim are precluded by the final, binding LRC decision.

### ii. No Exception Exists to Overcome the Finality of the LRC Decision

Although the arbitration is final, Caldarera "may go behind [the] final and binding award under [the CBA] and seek relief [by] demonstrat[ing] that his union's breach of its duty seriously undermine[d] the integrity of the arbitral process." *Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*, 682 F. App'x 42, 44 (2d Cir. 2017) (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 61 (1981)) (internal quotation marks omitted). As noted above, this duty relates to the union's conduct *during* the grievance process. *See DelCostello*, 462 U.S. at 164. A breach of the union's DFR "occurs when a union's conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998) (citing *Vaca v. Sipes,* 386 U.S. 171, 190 (1967)). "Conclusory allegations without specifying supporting facts to show a union's lack of good faith fail to state a valid claim." *Spielmann v. Anchor Freight. Inc.,* 551 F. Supp. 817, 822 (S.D.N.Y. 1982) (citations and alteration omitted).

The Second Circuit has found it "facially insufficient" to allege a DFR claim when an employee chooses to retain a private attorney and does not object to the union's non-participation. *See Van Beever v. United States Postal Serv.*, No. 83-6152, 1984 U.S. App. LEXIS 26785, at *8 (2d Cir. Jan. 9, 1984). The LRC Decision states that Plaintiff was represented by counsel, Mr. Arthur Schwartz, who is also Plaintiff's counsel in this action. LRC Decision at 2. The Decision further states that Caldarera's counsel

> articulated Mr. Caldarera's position. He stated that Mr. Caldarera's grievances are based on Article XIV, Sections l(d) and (e) of the NYSA-ILA Collective Bargaining Agreement (CBA), which he believes support Mr. Caldarera's claim that his "R" seniority affords him the right to choose the specific work assignment

he wants to perform at the terminal where he is hired. This right, in Mr. Caldarera's opinion, would enable him to earn more overtime than checkers with lower alpha-seniority classifications.

LRC Decision at 2, 3. Accordingly, Plaintiff's choice to engage outside representation, who, it appears, represented his legal position to the LRC, undercuts his claim that the union violated its duties during the grievance process.

Caldarera also seems to attack the LRC as biased, alleging in a set of "Supplemental Facts" that everyone at the LRC hearing was hostile to him, including union members, although the brief also states that it was unclear who was a witness and who was an adjudicator. *See* LRC Decision at 1–2 (providing list of attendees). As these alleged facts are not part of the FAC,[7] the Court has difficulty assuming or assessing their veracity. Additionally, there is no indication that Caldarera raised any concern related to bias amongst the adjudicators during the LRC hearing, thus waiving such an objection. *See AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 139 F.3d 980, 982 (2d Cir. 1998) (citation omitted). In any event, Caldarera's claims that the union-affiliated adjudicators were biased or hostile toward him is beside the point; the union members who were acting as adjudicators—and not representing or defending Caldarera's interests—owed him no duty of fair representation. *See, e.g.*, *Difini v. Spector Freight Sys., Inc.*, No. 79 C 277, 1979 WL 1867, at *3–4 (E.D.N.Y. Feb. 12, 1979). Plaintiff's claim would need to focus on those union members who were supposed to represent him. For all these reasons, Plaintiff has failed to allege a breach of the DFR that would overcome the finality of the LRC decision.

---

[7] In addition to lacking facts about bias in the LRC decision, the FAC also contains no allegations that the Labor Adjusters at the *prior* stage in the grievance process were biased.

11

### C. Plaintiff May Make Limited Amendments to his Complaint

Plaintiff seeks leave to amend his FAC, and has provided a proposed Second Amended Complaint. *See* Declaration of Arthur Z. Schwartz in Support of Motion to Amend ("Schwartz Decl.") [Dkt. 50-1]; Proposed Second Amended Complaint ("PSAC") [Dkt. 50-2]. Defendants contend that Plaintiff should not be allowed to amend because the amendments would be futile, would unduly delay the matter, and would be prejudicial, while Plaintiff would not be prejudiced if the amendment were denied. *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File and Serve a Second Amended Complaint ("Defs.' Am. Opp.") [Dkt. 56] at 5–10. As explained below, the Court will permit a limited amendment of the FAC.

After a party has amended his pleading as a matter of course, he may further amend only with the consent of the opposing party or with the court's leave, which the court should give freely when justice so requires. Fed. R. Civ. P. 15(a). A court has broad discretion when considering a request to amend, but it "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008), and citing *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000)).

A court may deny leave to amend when the request is futile, in that the additional information would not cure the deficiencies in the complaint. *Doe v. De Leon,* 555 F. App'x 84, 84–85 (2d Cir. 2014) (quoting *Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Ger.*, 615 F.3d 97, 114 (2d Cir. 2010)). "Where the plaintiff is unable to demonstrate that he would be able to

amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Arnold v. KPMG LLP*, 334 F. App'x 349, 352 (2d Cir. 2009) (quoting *Hayden v. County of Nassau,* 180 F.3d 42, 53 (2d Cir.1999)) (internal quotation marks and alteration omitted). A party may be prejudiced by amendment if the new claim would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)) (internal quotation marks omitted). But mere delay or complaints of time, effort, and money expended in litigation, without more, do not justify denying leave to amend. *Id.* (quoting *Block*, 998 F.2d at 350–51).

Caldarera's PSAC largely resembles the FAC, but features certain key changes. First, it adds claims of breach of the CBA against three new Defendants for whom Plaintiff worked over the course of his career, but limits those claims to their control over his work assignments since September 2016. *See* PSAC ¶¶ 7–9, 22–29, 38, 51. It appears that these work assignment issues were raised previously through the grievance process, as they are the same grievances identified in the FAC; the PSAC, however, alleges that the employers, not the union, were responsible for these assignments. *See* FAC ¶¶ 24–32; PSAC ¶¶ 37–45. Plaintiff's change in theory is based on facts about work assignment protocol that came out in the LRC decision. LRC Decision at 8–12. The PSAC adjusts the wording of the claim against the union consistent with his revised view on work assignments and adds a claim against the union related to the Master Lists (an issue that was referenced in the FAC but was not articulated in a claim). *See* FAC ¶¶ 10–11, 35; PSAC ¶¶ 14–15, 23–25, 29, 48–49. No Master List claim is pled against any employer.

The Court finds that amendment to include the new employers would be futile. The grievances against them are the very ones that have already been brought before the LRC. Just as the claim against GCT is precluded by the final and binding LRC decision, any claims against these additional employers for breach of the CBA would also be barred.[8] Accordingly, he may not amend the FAC with respect to these new employers. In combination with the determination above as to GCT, the forthcoming Second Amended Complaint ("SAC") may contain no claims against any of Plaintiff's employers.

With regard to the Master Lists claim, the Court does not find that it would be futile or unduly prejudicial to permit amendment. The Master Lists issue was identified in the FAC such that the union—the only Defendant against whom this claim is made—has not been caught off guard. Although the PSAC adds additional facts related to this claim, the Court does not find such additions to change its calculus. Because this is a pure DFR claim,[9] and because the Defendants' briefs focused entirely on defenses to a hybrid claim, the Court cannot assess whether this claim has merit based on the current briefing.[10] Moreover, the Court sees no prejudice to the union because it anticipates that the legal defenses to this DFR claim will largely overlap with those for the surviving work assignment and discharge DFR claims.

---

[8] Inasmuch as the LRC decision might not be binding as to the additional employers because they were not named and involved in the LRC decision, Plaintiff instead would have failed to exhaust his contractual remedies, also supporting a conclusion of futility.

[9] Because this claim is alleged only against the union, and not against any of Caldarera's employers, it is *not* a hybrid claim. It is not pled as being connected to any alleged breach of the CBA by any of Plaintiff's employers. *See DelCostello*, 462 U.S. at 164–65. A DFR claim alleged solely against a union is cognizable under the LMRA. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387–89 (2d Cir. 2015) (finding that plaintiff stated a DFR claim under the LMRA by alleging that his union refused to refer him for work for which he was qualified because of his transgender status and in retaliation for instituting legal proceedings).

[10] Defendants did discuss intra-union remedies and exhaustion, but this issue was not fully briefed, warranting further development after the Plaintiff amends his pleadings. *See* Defs.' Reply Br. at 4–6. *See also Fowlkes*, 790 F.3d at 389.

And with regard to any minor changes made in the PSAC, including the rephrasing of the work assignment claim to reflect the facts adduced at the LRC hearing, as well as potential reordering of paragraphs or correction of typographical errors, such amendments are permitted as well, as they are not prejudicial.

In sum, the Court grants leave to amend only with respect to adding the Master Lists claim against the union and other minor changes noted above. Plaintiff may not add additional defendants, nor may any employer be named as a defendant. Plaintiff's SAC may only contain DFR claims relating to conduct preceding and separate from the contractual grievance process, which have been identified in the first and second causes of action in the PSAC. *See* PSAC ¶¶ 48, 49.[11]

### III. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted with respect to the hybrid claim resolved through the LRC, but denied with respect to DFR claims against the union based on conduct predating the grievance process related to work assignments and collusion in his discharge from GCT. Plaintiff is permitted to amend his complaint, but only with respect to the Master Lists issue as it pertains to the union's DFR and its conduct prior to the contractual grievance process, along with other minor amendments. The Second Amended Complaint must be filed not later than **December 20, 2017**. The Clerk of Court is instructed to terminate Docket Entries 41 and 50.

**SO ORDERED.**

Date: December 13, 2017  
New York, New York

_____  
**VALERIE CAPRONI**  
**United States District Judge**

---

[11] Plaintiff may plead the claims listed in Count One as two separate DFR claims as to work assignments and collusive discharge if he so chooses.