UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___7/3/18___

------------------------------------------------------------X

WILLIAM CALDARERA,  :
                                                      :
                                    Plaintiff,  :
                                                      :
                -against-                       :                17-CV-1414 (VEC)
                                                      :
INTERNATIONAL LONGSHOREMEN'S  :                ORDER AND OPINION
ASSOCIATION, LOCAL 1,            :
                                                      :
                                    Defendant.  :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff William Caldarera brings this action against his union, Defendant International

Longshoremen's Association ("ILA"), Local 1, relating to purported unfavorable treatment in his

work assignments and his termination by Global Container Services, Inc. ("Global"), an

employer that formerly was a defendant in this case. This marks the Court's second opinion on a

motion to dismiss; the Court largely granted Defendants' first motion and dismissed Global, but

allowed Plaintiff to amend his Complaint and permitted Local 1 to move again to dismiss

because the Defendants misconstrued the nature of Plaintiff's claims when briefing their first

motion. The parties have now briefed the claims that had been previously unaddressed, and

Defendant's motion to dismiss is GRANTED.

## I.  BACKGROUND

The Court assumes familiarity with the facts of this case as laid out in the Court's prior

opinion, as well as the outcome of the prior motion. *See* Opinion and Order, December 13, 2017

("MTD Op.") [Dkt. 67] at 2–4. It is worth repeating, however, some of the facts most central to

the outstanding claims, as well as laying out the case's curious posture.

1

## A. Relevant Factual Background

Caldarera is a member of Defendant Local 1, which represents workers who unload ships in and around New York City. First Amended Complaint ("FAC") [Dkt. 35] ¶¶ 4–5. He specifically works as a "Checker;" checkers verify the identity of shipping containers and assist with loading and unloading ships. *Id*. ¶ 8.

Plaintiff claims that, in September 2016, after working for Global for about a year, he got into an argument with his Local 1 "Union Steward" (also called a "Shop Steward" or "Dock Boss"), Michael Fulbrook. FAC ¶¶ 15, 18. Fulbrook allegedly told the terminal manager that he "[didn't] want [Caldarera] working [at Global]. Check him out!" *Id*. ¶ 19. A few days later, the President of Global, Kevin Price, who allegedly overheard the Fulbrook altercation, told Plaintiff that he would no longer be hired by Global. Price would not provide a reason for that decision. *Id*. ¶¶ 18, 20.

Despite Price's statement to Caldarera, Global hired him to work in December 2016. FAC ¶ 21. Plaintiff alleges, however, that he received a "do not hire" letter from Global on January 9, 2017 (dated December 30, 2016) that falsely claimed he had failed to spot containers during his work in December. *Id*. ¶ 22. He has not been hired by Global since, and Plaintiff claims that Local 1 colluded with Global to issue the letter. *Id*. ¶¶ 22–23. He also claims that, after the September altercation, Defendant directed that he be assigned by other employers to jobs that offered less overtime. *Id*. ¶¶ 24–26.

## B. Procedural History

In deciding the prior motion to dismiss, the Court determined that the parties had failed to address what appeared to be stand-alone "duty of fair representation" claims against Local 1 that preceded Plaintiff's engagement with the formal grievance process, namely the alleged conduct

related to Plaintiff's work assignments and collusive discharge. *See* MTD Op. at 7–8, 15. The Court also permitted Plaintiff to make limited amendments to his claim, primarily allowing him to add a claim related to Local 1's alleged failure to update "Master Lists" that were associated with each employer. *Id*. at 12–15.

The Second Amended Complaint ("SAC") was due December 20, 2017, a week after the Court's opinion. MTD Op. at 15. On the day it was due, Plaintiff sought an extension due to his counsel's allegedly busy calendar and his purported desire to add yet another claim to the SAC. Letter, December 20, 2018 [Dkt. 68]. The Court extended the deadline to January 5, 2018, but instructed that Plaintiff was only permitted to amend his claims as ordered in the Court's opinion, and that any additional amendment would have be to be sought separately by motion. Letter Endorsement, December 20, 2018 [Dkt. 70].

Plaintiff failed to file his SAC by the new deadline. On January 9, 2018, the Court ordered that Plaintiff would now have to seek leave from the Court to amend his complaint and scheduled a conference for January 26, 2018. Order, January 9, 2018 [Dkt. 71]. In response, Plaintiff sought permission to file the SAC late, claiming that he had failed to file by the deadline because his counsel's office was closed on January 4 due to a snow storm, because clerical staff was unable to reach the office on January 5, and because counsel was ill on January 8. Letter, January 10, 2018 [Dkt. 74]. The Court denied Plaintiff's request, as it did not find the proffered excuses credible or persuasive. Letter Endorsement, January 10, 2018 [Dkt. 75]. One week later, Plaintiff reiterated his request for permission to file the SAC after the deadline that had been set. Letter, January 17, 2018 [Dkt. 76]. The Court responded by further explaining why it did not credit Plaintiff's counsel's excuses for failing to file the SAC on time, and stated that, if

Plaintiff filed a separate matter with the additional claims, it would consider consolidation. Letter Endorsement, January 18, 2018 [Dkt. 77].

Ultimately, Plaintiff filed a separate action containing additional claims, *see Caldarera v. International Longshoremen's Association, Local 1*, 18-CV-468,[1] and although the Court declined to consolidate the cases, it scheduled joint briefing of Defendant's motions to dismiss in both cases. Order, March 9, 2018 [Dkt. 86]. Before briefing began, however, Plaintiff voluntarily dismissed his Second and Third causes of action in *Caldarera II*, and then dismissed the entirety of *Caldarera II* in the course of briefing the motions to dismiss. *See* Voluntary Dismissals [18-CV-468, Dkts. 17, 32]. This left only Plaintiff's original work assignment and collusive discharge claims—the same two claims that the parties failed adequately to address in the briefing on the first motion to dismiss—as the only remaining claims. Both have now been addressed by the instant motion.

## II.    DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although courts "must take all of the factual allegations in the complaint as true, [they] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).

---

[1]    The Court will refer to the instant case as "*Caldarera I*" and the latter case, 18-CV-468, as "*Caldarera II*."

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the pleadings as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). "[A] district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). A court may also take judicial notice of facts outside the pleadings provided they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Accordingly, courts have regularly taken judicial notice of arbitration awards upon a motion to dismiss. *See, e.g.*, *Gorbaty v. Kelly*, No. 01-CV-8112 (LMM), 2003 WL 21673627, at *2 n.3 (S.D.N.Y. July 17, 2003) (taking judicial notice of an arbitration award).

"The duty of fair representation is a statutory obligation under the [National Labor Relations Act], requiring a union to serve the interests of all members without hostility or discrimination, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017) (quoting *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015)) (internal quotation marks omitted). To prove a duty of fair representation ("DFR") claim, a plaintiff must "prove that the union's actions or inactions are either arbitrary, discriminatory, or in bad faith [and] must demonstrate a causal connection between the union's wrongful conduct and [his] injuries." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *Spellacy v. Airline Pilots Ass'n–Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)) (additional citation and internal quotation marks omitted). "Conclusory allegations without specifying supporting facts to show a union's lack of good faith fail to state a valid claim."

*Spielmann v. Anchor Freight. Inc.,* 551 F. Supp. 817, 822 (S.D.N.Y. 1982) (citation, alteration, and internal quotation marks omitted).

Defendant argues that Plaintiff's remaining DFR claims are not adequately pled because, *inter alia*, they do not contain sufficient allegations to support plausibly his theory of what is effectively a conspiracy between his union and his employers. Memorandum in Support of Defendant's Motion to Dismiss ("Def.'s Mem.") [Dkt. 92] at 8–14.

### A. Plaintiff's Work Assignments Claim Is Dismissed

Plaintiff alleges that, after his altercation with Fulbrook, Defendant directed that he be given work that carried less opportunity for overtime and that the Dock Boss for each employer barred him from receiving better assignments. *See* FAC ¶¶ 15, 24–26.

Defendant argues that the lack of detail regarding the alleged conspiracy against Plaintiff renders it speculative and implausible. Def.'s Mem. at 10–12; Reply in Further Support of Defendant's Motion to Dismiss ("Reply") [Dkt. 99] at 4–7. According to Defendant, the FAC "does not name the Local 1 and employer representatives who conspired, where and when they met, why the Port employers would go along with this conspiracy, what the precise agreement was, how the alleged conspirators threaded the needle of adversely affecting Plaintiff without violating his seniority rights under the [Collective Bargaining Agreement], or even an inkling of how this agreement operated on the ground. The only fact approaching specificity is that Plaintiff was rude to a single Local 1 shop steward at a single employer." Reply at 6. Defendant also points to a fact established during arbitration of Plaintiff's grievances regarding his work assignments: Plaintiff's specific work assignments were controlled by his individual employers

and their Dock Bosses, not by Defendant.  Def.'s Mem. at 11–12; Reply at 6; Arbitration

Decision[2] [Dkt. 94-1] at 8–11; MTD Op. at 4, 13.

Plaintiff responds that his work assignments claim is adequately pled,[3] pointing to the

same paragraphs in his FAC referenced above (¶¶ 24–25) and to the exhibits attached to the

FAC, which contain his grievances regarding his work assignments.  Memorandum in

Opposition to Defendant's Motion to Dismiss ("Opp.") [Dkt. 98] at 5; Plaintiff's Formal

Grievances[4] ("Pl.'s Grievances") [Dkts. 35-3–35-15].  Plaintiff does not provide any additional

explanation for the alleged wrongdoing.[5]  Opp. at 5.

The Court finds that Plaintiff's work assignments claim is simply not plausible as pled.

The allegations in his FAC are scant, as Plaintiff fails to offer any details as to how Defendant

coordinated with Plaintiff's various employers to give him inferior work assignments.  Plaintiff

---

[2]    The Arbitration Decision, which the Court upheld as final and binding on Plaintiff's grievances in its
opinion in response to Defendants' first motion to dismiss, explained that the Dock Bosses act pursuant to an
employer's "right to assign any checker to a work assignment that it determines, in its own discretion, best enhances
the employer's operations," and that the Dock Bosses function as "supervisory employee[s] selected by the
employer to select the best qualified and best suited checkers for work assignments."  Arbitration Decision at 10.
*See* MTD Op. at 8–11.

Plaintiff anticipated amending his claims to reflect this change in his understanding of how assignments
were made—that the employers, and not the union, exercised discretion in controlling work assignments—but this
change never made it into the materials before the Court because Plaintiff failed to timely amend the FAC, leaving
the allegations the same as they were prior to the first motion to dismiss.  *See* MTD Op. at 13.

[3]    Inexplicably, Plaintiff dedicated more than two pages of his Opposition to the difference between Rule
12(b)(1) and Rule 12(b)(6).  *See* Opposition at 2–4.  But once Plaintiff voluntarily dismissed *Caldarera II*, his
argument relating to Rule 12(b)(1) became irrelevant because Defendant moved only under Rule 12(b)(6) as to the
*Caldarera I* complaint.  *See* Def.'s Mem. at 1.

[4]    Plaintiff cites to Exhibits C1 through C15, but this series of exhibits terminates at C13.

[5]    Plaintiff also contends that it is inappropriate for the Court to consider the Arbitration Decision, and
appears to take issue with the fact that it was filed as an attachment to an attorney declaration.  Opp. at 5.  Taking
judicial notice of the Arbitration Decision is proper, and the Court took notice of the very same document in its first
motion to dismiss opinion.  *See* MTD Op. at 8–11.  That the Arbitration Decision was filed as an exhibit to a
substance-less, *pro forma* attorney declaration is of no moment; the declaration says little more than that the
attached document is a true and correct copy of the Arbitration Decision, and that the Court already considered it in
its first opinion.  *See* Declaration of Kyle Winnick ("Winnick Decl.") [Dkt. 94] ¶ 2.

does not say whom his union allegedly directed to give him inferior assignments, but the natural inference is that Defendant would have directed the employers, or the Dock Bosses who worked for them, to do so. But the FAC alleges no connection between Plaintiff's altercation with Fulbrook, the only specific detail Plaintiff includes, and the proliferation of suboptimal assignments he received from *multiple* employers—not a single conversation, meeting, or other evidence of the alleged coordination. And the Arbitration Decision's emphasis that the employers, not the Union, managed his work assignments (through the Dock Bosses) further undercuts Plaintiff's position that his assignments were influenced by Defendant. *See* Arbitration Decision at 8–11.

Additionally, Plaintiff makes no effort to explain or correct for these deficiencies in his Opposition. He points to his grievances as further support for his claim, but he makes no effort to excavate them to shore up his case. Nonetheless, the Court has conducted its own review of Plaintiff's grievances. The Court finds that they provide minimal detail and only briefly describe instances in which Plaintiff was assigned less ideal shifts, for which he claims lost wages; the exhibits do nothing to fill the holes the Court has identified in Plaintiff's allegations. *See generally* Pl.'s Grievances.

In all, the idea that Defendant manipulated Plaintiff's assignments is wholly conclusory. "In the absence of subsidiary allegations fleshing out an agreement to retaliate against [him], the bare and conclusory allegation that [Defendant] manifested bad faith by conspiring with [Plaintiff's employers] does not rise above *Twombly's* plausibility threshold. *Twombly* requires more than a charge that something bad happened and a conclusory allegation that this bad thing was also illegal because it resulted from a malevolent conspiracy." *Bejjani v. Manhattan Sheraton Corp.*, No. 12 CIV. 6618 JPO, 2013 WL 3237845, at *15 (S.D.N.Y. June 27, 2013)

(citing *Twombly*, 550 U.S. 544), *aff'd*, 567 F. App'x 60 (2d Cir. 2014). Accordingly, Plaintiff's

work assignments claim must be dismissed.

### B. Plaintiff's Discharge Claim Is Dismissed

Plaintiff alleges that, after the September 2016 altercation with Fulbrook, Price told him

that he would no longer be hired by Global; Price would not provide a reason for that decision.

FAC ¶ 20. Although Plaintiff subsequently worked for Global in December 2016, Plaintiff

alleges that he received a "do not hire" letter from Global on January 9, 2017. The "do not hire

letter" falsely (according to Plaintiff) claimed that he had failed to spot containers when he

worked for Global in December. *Id.* ¶¶ 21–22. He has not been hired by Global since, and he

claims that "Local 1 colluded with Global . . . management to issue the 'no hire' letter to solidify

Plaintiff's punishment for being a 'troublemaker.'" *Id.* ¶¶ 22–23.

Defendant asserts that Plaintiff has failed to explain the connection between the events in

September and the "do not hire" letter that was issued at the end of December, particularly in

light of the fact that Plaintiff was hired to work at Global in December.[6] Def.'s Mem. at 13.

Additionally, Defendant argues that "Plaintiff does not specify who specifically colluded, when

and where these individuals met and conspired, or how exactly Local 1 and [Global] operated in

unison;" he does not allege that Fulbrook met with Price to plan the termination, nor does he explain

---

[6]     Defendant also argues that the "do not hire" letter was retracted and substituted with a warning letter on January 11, 2017, which would negate the goal of any collusive conspiracy against Plaintiff. Def.'s Mem. at 13; Reply at 8–9. This argument is based on an oral representation by Global's counsel at a pretrial conference that the letter had been replaced with a warning. *See* Transcript of April 28, 2017 Conference [Dkt. 94-2] at 3:18–4:2. The Court notes that there is tension in the Circuit as to whether a court may take judicial notice of statements made at such conferences for their truth. *See Yates v. Villalobos*, No. 15 CIV. 8068 (KPF), 2018 WL 718414, at *1 n.2 (S.D.N.Y. Feb. 5, 2018) (collecting cases that suggest judicial notice of conference statements can and cannot be taken for their truth) (citations omitted). Although Plaintiff may have conceded that the "do not hire" letter was rescinded, *see* Opp. at 4 ("[T]he confusing issuance and then non-issuance of a Do Not Hire letter . . . ."), Defendant cites no case law explaining how the Court might consider this supposed concession in assessing the sufficiency of the FAC's allegations. Accordingly, the Court is reluctant to rely on the additional fact of the letter's rescission as a basis for granting this motion, but notes that the ultimate outcome would be the same either way.

why Defendant would plot to have him terminated from Global but not from all employers. Def.'s Mem. at 13–14; Reply at 8.

Plaintiff responds by merely reiterating the allegations contained in the FAC; he does not engage with any of Defendant's arguments. Opp. at 4–5. He writes that "[t]here should be no question that this series of events states a clear DFR claim against Local 1, based on the actions of its agent Fulbrook, and a fair presumption that after he caused Plaintiff to be fired, he kept Plaintiff from being employed at Global." Opp. at 4–5.

As with the work assignments claim, the allegations are too bare and speculative to survive a motion to dismiss. Plaintiff alleges no connection between the September events and the subsequent "do not hire letter" other than their proximity in time, notwithstanding the fact that he worked at Global in between, nor does he provide any detail as to who perpetrated the alleged collusion, how, or when. Plaintiff points to "the actions of [Defendant's] agent Fulbrook" before he states summarily that "[Fulbrook] caused Plaintiff to be fired . . . ." Opp. at 4–5. But the only facts alleged in the FAC regarding actions taken by Fulbrook are that he and Plaintiff argued in September 2016 and that Fulbrook told Global's terminal manager (who is not named—it is unclear if this is another title for Price) not to hire Plaintiff in the future. Plaintiff alleges no secret meetings or hushed conversations in which Fulbrook planned with Price or anyone else at Global to issue the letter or not to hire Plaintiff. And the Court is asked to speculate that Fulbrook's one statement to the terminal manager constitutes evidence of collusion, particularly because Plaintiff worked at Global subsequent to that alleged admonition from Fulbrook. Fulbrook's single statement is not enough, and repeating a conclusory allegation does not make it any less conclusory. Accordingly, Plaintiff's collusive discharge claim is not plausible and also must be dismissed.

### III. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in its entirety and with prejudice. The Clerk of Court is instructed to terminate Docket Entry 89 and close the case.

**SO ORDERED.**

Date: **July 3, 2018**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**